UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ROGELIO CALINGO and GEORGIANA           :
CALINGO, on their own behalf and on       :
behalf of all class members similarly situated,   :
           Plaintiffs,       :
                                                         :       **MEMORANDUM DECISION**
v.       :
                                                         :       7:11-cv-628 (VB)
MERIDIAN RESOURCES COMPANY LLC and   :
EMPIRE HEALTHCHOICE ASSURANCE, INC.,   :
           Defendants.       :
-------------------------------------------------------------x

Briccetti, J.:

        Plaintiffs Rogelio Calingo ("Rogelio") and Georgiana Calingo ("Georgiana") bring this

action on behalf of themselves and all other similarly situated class members.  Plaintiffs have

filed a motion to remand this action to New York Supreme Court (Doc. #16), and defendants

have filed a motion to dismiss (Doc. #8).  For the reasons set forth below, the Court denies

plaintiffs' motion and grants defendants' motion as to plaintiffs' claim for damages and

plaintiffs' claim under N.Y. Gen. Bus. Law. § 349.

## BACKGROUND

        For purposes of ruling on the motions, the Court accepts all factual allegations of

plaintiffs' complaint as true.

        Plaintiff Rogelio was a federal employee who participated in an Empire Blue Cross Blue

Shield New York Federal Employee Program ("Heath Plan") and was insured by defendant

Empire HealthChoice Assurance, Inc. ("Empire").  Plaintiff Georgiana is a dependant of Rogelio

and was also insured by Empire.  On February 22, 2009, Georgiana fell in the Palisades Mall in

West Nyack, New York.  As a result of her fall, she suffered injuries that were paid for by

Empire.  Georgiana recovered $382,000 as part of a settlement for the injuries that she suffered.

Defendant Meridian Resource Company LLC ("Meridian") is subroger of Empire and has asserted subrogation claims seeking reimbursement for the cost of health care services that Empire provided to its New York insureds who suffered personal injury and settled actions for personal injuries, malpractice, and wrongful death.  Meridian and Empire, according to defendants, have asserted a lien against Georgiana for $143,378.60 based on her recovery, but have not collected on it.

Plaintiffs are members of a class that share the following characteristics: (1) all class members participate in health insurance plans provided by Empire or other benefit providers for which Meridian provides subrogation services; (2) all class members suffered personal injuries for which they received medical treatment paid for by Empire or are family members of such individuals; (3) all class members either commenced an action for a personal injury which settled on or after November 12, 2009 or has not yet settled, or are family members of such individuals; and (4) all class members were required and/or asked by Meridian to reimburse Empire or another benefit provider from the proceeds of their recovery.

Plaintiffs commenced this action in the Supreme Court of the State of New York, Rockland County, on December 9, 2010.  Defendants filed a notice of removal on January 24, 2011 asserting federal question jurisdiction.

**DISCUSSION**

This action arises because of a change in New York law that affects plaintiffs and the class members.  Section 5-335 of the New York General Obligations Law applies to plaintiffs settling personal injury or wrongful death civil actions after November 12, 2009.  It provides:

When a plaintiff settles with one or more defendants in an action for

2

> personal injuries . . . , it shall be conclusively presumed that the
> settlement does not include any compensation for the cost of health
> care services, loss of earnings or other economic loss to the extent
> those losses or expenses have been or are obligated to be paid or
> reimbursed by a benefit provider, except for those  payments as to
> which there is a statutory right of reimbursement.  By entering into
> any such settlement, a plaintiff shall not be deemed to have taken an
> action in derogation of any nonstatutory right of any benefit provider
> that paid or is obligated to pay those losses or expenses; nor shall a
> plaintiff's entry into such settlement constitute a violation of any
> contract between the plaintiff and such benefit provider.
>
> Except where there is a statutory right of reimbursement, no party
> entering into such a settlement shall be subject to a subrogation
> claim or claim for reimbursement by a benefit provider and a benefit
> provider shall have no lien or right of subrogation or reimbursement
> against any such settling party, with respect to those losses or
> expenses that have been or are obligated to be paid or reimbursed by
> said benefit provider.

N.Y. Gen. Oblig. Law § 5-335(a).  The action presently before the Court challenges how this

provision is affected by the Federal Employees Health Benefits Act, 5 U.S.C. §§ 8901-8914

("FEHBA").  FEHBA provides

> The terms of any contract under this chapter [5 U.S.C. §§ 8901-8914]
> which relate to the nature, provision, or extent of coverage or benefits
> (including payments with respect to benefits) shall supersede and
> preempt any State or local law, or any regulation issued thereunder,
> which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1).

Congress enacted FEHBA to provide health benefits for federal employees and their

dependants.  The law vested a government agency – currently, the Office of Personnel

Management ("OPM") – with the authority to establish insurance plans with multiple insurers,

known under the Act as "carriers."  5 U.S.C. § 8901(7).  One such insurance plan is the Service

Benefit Plan, U.S.C. § 8903(1), which was created pursuant to a contract between OPM and the

Blue Cross Blue Shield Association ("BCBSA").  BCBSA acts on behalf of local Blue Cross and

3

Blue Shield companies which underwrite the plan and administer it within their respective

territories.

Under FEHBA, OPM has the sole authority to contract for the provision of health plans,

to determine the benefit structure of such plans and to promulgate the official description of the

plans' terms in a Statement of Benefits.  The terms of the Statement of Benefits are incorporated

in the contract between OPM and BCBSA.  The Statement of Benefits provides in relevant part:

> If another person or entity, through an act or omission, causes you to
> suffer an injury or illness, and if we pay benefits for that injury or
> illness, you must agree to the provisions listed below . . . .  All
> recoveries you or your representatives obtain (whether by lawsuit,
> settlement, insurance or benefit program claims, or otherwise), no
> matter how described or designated, must be used to reimburse us in
> full for benefits we paid.

2009 State of Benefits at 114; 2010 Statement of Benefits at 112; 2011 State of Benefits at 124.[1]

In addition, the contract between OPM and BCBSA provides:

> The Carrier's subrogation rights, procedures and policies, including
> recovery rights, shall be in accordance with the provisions of the
> agreed upon brochure text [i.e., the Statement of Benefits], which is
> incorporated in this Contract in Appendix A.  As the member is
> obligated . . . to comply with the terms of this Contract, the Carrier,
> in its discretion, shall have the right to file suit in federal court in
> order to enforce those rights.

2008 Master Contract § 2.5(a).  The Master Contract further provided: "[A]ll Participating [Blue

Cross and Blue Shield] Plans shall subrogate under a single, nation-wide policy to ensure

equitable and consistent treatment for all Members under the Contract."  2008 Master Contract

§ 2.5(f).

---

[1]      Although the Court does not generally review materials outside the pleadings on a
motion to dismiss pursuant to Rule 12(b)(6), because plaintiffs referred to the Master Contract in
their complaint, it is appropriately considered in this ruling.

## I.        Plaintiffs' Motion to Remand

Because plaintiffs' motion to remand challenges the Court's subject matter jurisdiction to hear this case, the Court will address it first.  A party may remove a case from state court to federal court only if the action is one over which the federal court would have had original jurisdiction.  28 U.S.C. § 1441(a).  In order to demonstrate that removal is proper, the removing party bears the burden of showing the existence of federal jurisdiction.  The rules regarding removal are to be strictly construed.  In re Methyl Tertiary Butyl Ether Products Liability Litig., 342 F. Supp. 2d 147, 151 (S.D.N.Y. 2004).  "[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009).  Once the question of jurisdiction is raised, the burden of establishing subject matter jurisdiction rests on the party asserting such jurisdiction.  Thomson v. Gaskill, 315 U.S. 442, 446 (1942).

Plaintiffs make three arguments in support of their motion to remand.  First, they argue the Court lacks jurisdiction under the Class Action Fairness Act because of the local controversy exception.  Second, they assert there is no federal question in this action.  Finally, they contend defendants were not acting under the direction of a federal agency so as to provide jurisdiction under 28 U.S.C. § 1442(a)(1).

The Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), creates original jurisdiction in the district court for certain class actions.  Under CAFA, the Court possesses jurisdiction when (a) the amount in controversy is greater than $5,000,000 exclusive of costs and interests; (b) any plaintiff is diverse from any defendant; and (c) there are more than 100 class members.  28 U.S.C. §§ 1332(d)(2) & 1332(d)(5)(B).  In addition, the statute provides that the

5

district court "shall decline to exercise jurisdiction" when the following conditions are met:
(a) more than two-thirds of the class members are citizens of the state in which the action was
commenced; (b) when at least one defendant, from whom significant relief is sought and whose
conduct forms a significant basis for relief, is a citizen of the state in which the action was
commenced; (c) the principal injuries occurred in the state in which the action was originally
filed; and (d) during the three-year period prior the commencement of the case, no other class
actions had been filed against any of the defendants on behalf of any persons.  28 U.S.C.
§ 1332(d)(4).  These conditions "are designed to draw a delicate balance between making a
federal forum available to genuinely national litigation and allowing the state courts to retain
cases when the controversy is strongly linked to that state."  Hart v. FedEx Ground Package Sys.
Inc., 457 F.3d 675, 682 (7th Cir. 2006); Brook v. UnitedHealth Group, Inc., 2007 U.S. Dist.
LEXIS 73640, at *8 (S.D.N.Y. Sept. 27, 2007). They "keep purely local matters and issues of
particular state concern in the state courts . . . ."  Lowery v. Alabama Power Co., 483 F.3d 1184,
1193-94 (11th Cir. 2007).

        Once the general requirements under CAFA are met, the party asserting federal
jurisdiction has fulfilled its burden.  It turns to the party seeking remand to establish that one of
CAFA's exceptions apply.  Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v.
Countrywide Fin. Corp., 603 F.3d 23, 26 (2d Cir. 2010).  Here, the requirements for jurisdiction
under CAFA are met, and plaintiffs contend an enumerated exception to CAFA's jurisdiction
applies.  Therefore, the burden is on plaintiffs to demonstrate remand is warranted.

        Plaintiffs assert remand is warranted pursuant to 28 U.S.C. § 1332(d)(4)(A) because all
the requirements of the section have been met.  The success of plaintiffs' argument turns on
whether CAFA's exceptions are jurisdictional as plaintiffs' motion was filed more than thirty

6

days after the notice of removal was filed.

A party seeking remand of an action for any reason except subject matter jurisdiction must move to remand within thirty days of the filing of the notice of removal.  28 U.S.C. § 1447(c); 14C Wright, Miller and Cooper, Federal Practice and Procedure, § 3739 at 454-56 (3d ed. 1998).  A motion seeking remand for lack of subject matter jurisdiction, on the other hand, may be asserted at any time.  28 U.S.C. § 1447(c).  Defendants' notice of removal was filed on January 28, 2011; plaintiffs' motion was filed on April 25, 2011.  Therefore, plaintiffs' motion is only timely if CAFA's exceptions divest the Court of subject matter jurisdiction.

Courts that have addressed this issue have concluded the local controversy exception to CAFA jurisdiction does not deprive the district court of subject matter jurisdiction over the case.  Specifically, the introductory language to the local controversy exception states the court "shall decline to exercise jurisdiction" when the factors are met.  See 28 U.S.C. § 1332(d)(4).  It follows that even where the local controversy exceptions are present, subject matter jurisdiction is present, but the district court may not hear the matter, assuming a timely motion to remand is filed.

The Eighth Circuit Court of Appeals has previously found that the local controversy exception does not deprive the district court of subject matter jurisdiction in light of the fact that the exception is set apart from the grant of jurisdiction under CAFA.  Graphic Communs. Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp., 636 F.3d 971, 973 (8th Cir. 2011) ("The local controversy provision, which is set apart from the above jurisdictional requirements in the statute, inherently recognizes the district court has subject matter jurisdiction by directing the court to 'decline to exercise' such jurisdiction when certain requirements are met.").  The Court of Appeals found the local controversy exceptions operated akin to an abstention

principle, which is not a matter of subject matter jurisdiction.  This holding is in line with other

Court of Appeals decisions.  See Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1023 (9th Cir.

2007) ("§§ 1332(d)(4)(A) and (B) require federal courts – although they have jurisdiction under

§ 1332(d)(2) –  to 'decline to exercise jurisdiction' when the criteria set forth in those provisions

are met.").  The Serrano Court expressly found the local controversy provisions operated "as

exceptions to jurisdiction, not elements of original jurisdiction."  Id., 478 F.3d at 1023.

Further, if the local controversy exception was jurisdictional, courts would be required to

consider it no matter when asserted and would be required to address it sua sponte if appropriate.

See Fed. R. Civ. P. 12(h)(3); Galland v. Margules, 191 Fed. Appx. 23 (2d Cir. 2006).  Courts,

however, have not done so, disregarding it when not properly asserted.  See, e.g., Blockbuster,

Inc. v. Galeno, 472 F.3d 53 (2d Cir. 2006) (declining to address whether local controversy

exception applies because it was not raised by the parties); Braud v. Transp. Serv. Co., 445 F.3d

801, 809 n.17 (5th Cir. 2006) (finding plaintiffs had waived argument that local controversy

exception applied by not raising it on appeal); Nicholson v. Prime Tanning Corp., 2009 U.S.

Dist. LEXIS 80445, at *2 n.1 (W.D. Mo. Sept. 3, 2009) (declining to address application of local

controversy exception because argument was raised for the first time in reply brief).  Because the

dog did not bark in these cases, the courts possessed subject matter jurisdiction even if the

factors under Section 1332(d)(4) were present.  See A. Doyle, Silver Blaze, in The Complete

Sherlock Holmes (1927).

Plaintiffs cite two cases from this district in which the local controversy exception was

discussed in the context of subject matter jurisdiction.  See Anirudh v. CitiMortgage, Inc., 598 F.

Supp. 2d 448 (S.D.N.Y. 2009); Mattera v. Clear Channel Communs., Inc., 239 F.R.D. 70

(S.D.N.Y. 2006).  Because these decisions do not discuss the particular scenario here – an

untimely motion to remand – they are clearly distinguishable.  In <u>Anirudh</u>, the court granted a timely Rule 12(b)(1) motion to dismiss because the local controversy exception applied. Although the court found it lacked subject matter jurisdiction, the court did not discuss how the local controversy exception affected its jurisdiction.  Instead, the court stated simply it "lack[ed] subject matter jurisdiction."  <u>Anirudh</u>, 598 F. Supp. 2d at 454.  The court also stated it "must decline to exercise jurisdiction over the case."  <u>Id.</u>, 598 F. Supp. 2d at 451-52.  A review of the motion papers indicates there was no discussion over whether the local controversy exception was jurisdictional as is the question currently before this Court.  The vague language alternating between declining to exercise jurisdiction and not possessing jurisdiction indicates the question now before the Court was not before the court in <u>Anirudh</u>.  Further, the court in <u>Mattera</u> similarly concluded that it lacked subject matter jurisdiction without discussing whether the local controversy provision was jurisdictional.  These decisions do not provide the strong support for plaintiffs' motion that plaintiffs argue they do and are clearly distinguishable.

The Court of Appeals in <u>Graphic Communs.</u> found that Section 1447(c)'s thirty day deadline did not apply to remand under CAFA because it did not read the local controversy provision as a "defect" under Section 1447(c).  <u>Graphic Communs.</u>, 636 F.3d at 975.  Instead, the Court of Appeals held a motion to remand must be filed within a "reasonable" time period after removal.  Nonetheless, in remanding the case back to the district court determine the reasonableness of the delay in plaintiff's motion to remand, the Court of Appeals recognized that the reasonable time could be as short as thirty days.

Plaintiffs filed their motion to remand 87 days after removal.  While the Court does not wish to create a bright line for filing for removal in a CAFA case, without an argument regarding the reason for the delay, the Court believes 87 days is too long and is unreasonable.

9

In light of the statutory language and the case law which has directly addressed the point, the local controversy exception is not jurisdictional, and the application of the exception is waived by a failure to be raised in a timely manner.  First, the text and structure of the statute insofar as it sets forth the elements of subject matter jurisdiction under CAFA and then provides exceptions which would require the Court to decline jurisdiction indicates that Congress did not intend for the exception to negate subject matter jurisdiction under CAFA.  Rather, as noted in Serrano, the exceptions are exceptions to the exercise of subject matter jurisdiction, not exceptions to the existence of subject matter jurisdiction.  In addition, no court addressing the questions directly has held the exceptions to be jurisdictional.  Therefore, plaintiffs' motion should have been filed within thirty days of removal pursuant to 28 U.S.C. § 1447(c).  Because the motion is untimely, remand is denied.  The Court possesses jurisdiction over this matter pursuant to CAFA, as the factors set forth in 28 U.S.C. §§ 1332(d)(2) & 1332(d)(5)(B) are met, a point which plaintiffs do not dispute.[2]

## II.     Defendants' Motion to Dismiss

Because the Court possesses subject matter jurisdiction over this case, it is appropriate to rule on defendants' motion to dismiss.  The function of a motion to dismiss is "merely to assess

---

[2]     The Court takes no position on defendants' assertions that subject matter jurisdiction is also appropriate pursuant to federal question jurisdiction or the federal officer statute.

In their reply memorandum in support of their motion to remand, plaintiffs assert for the first time that defendants fail to meet the $5,000,000 threshold under 28 U.S.C. § 1332(d)(2).  Although plaintiffs first advanced this argument in a footnote in their reply papers, the Court is obliged to address it because it challenges the Court's subject matter jurisdiction.  A review of the notice of removal indicates there is a "reasonable probability" plaintiffs' recovery in this case, if successful, will exceed $5,000,000 and that "reasonable probability" existed at the time of removal.

the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  Hishon v. King, 467 U.S. 69, 73 (1984).  The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct.  Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937 (2009).

Defendants argue dismissal is appropriate because (1) plaintiffs' claims are preempted under the FEHBA's preemption provision, (2) federal common law displaces plaintiffs' reliance on state law, and (3) the United States's sovereign immunity bars plaintiffs' claims.  In response, plaintiffs argue Section 5-335 is not preempted by FEHBA because the New York law does not relate to "the nature, provision, or extent of coverage or benefits."  They further argue federal common law does not preempt their claims because their claims do not implicate a "uniquely federal interest" under Boyle v. United Technologies Corp., 487 U.S. 500 (1988).  Finally, plaintiffs contend that because the federal government would not be liable for any damages pursuant to this action, sovereign immunity does not apply.  The Court will address each argument seriatim.

### A.      FEHBA Preemption

As stated above, the FEHBA preemption provision provides "the terms of any [FEHBA] contract which relate to the nature, provision, or extent of coverage or benefits (including

11

payments with respect to benefits) shall supersede and preempt any State . . . law which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1).  The Supreme Court has commented concerning this section, "state law – whether consistent or inconsistent with the federal plan provisions – is displaced on matters of 'coverage or benefits.'" Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 686 (2006), aff'g 396 F.3d 136 (2d Cir. 2005), aff'g 2003 U.S. Dist. LEXIS 16276 (S.D.N.Y. 2003); Pollitt v. Health Care Serv. Corp., 558 F.3d 615, 616 (7th Cir. 2009) ("5 U.S.C. § 8902(m)(1) . . . provides that the terms of a federal insurance contract supersede state law . . . .").  Plaintiffs assert their claims concerning subrogation do not involve "coverage or benefits" that would fall within the purview of the section, while defendants argue Section 8902(m) expressly preempts any New York law regarding subrogation.

The Supremacy Clause of the United States Constitution "invalidates state laws that interfere with, or are contrary to, federal law." Hillsborough County v. Automated Medical Laboratories, Inc., 471 U.S. 707, 712 (1985).  Congressional intent is the "ultimate touchstone" in any preemption case. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996).  Federal preemption may either be express or implied. Air Transp. Ass'n of Am. v. Cuomo, 520 F.3d 218, 220 (2d Cir. 2008).  Express preemption arises when Congress explicitly defines how its statute affects state law, English v. General Elec. Co., 496 U.S. 72, 78 (1990), and is a function of Congressional intent. Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299 (1988).  Where Congress has spoken explicitly, determining its intent is easy. English, 496 U.S. at 79 ("[W]hen Congress has made its intent known through explicit statutory language, the courts' task is an easy one.").  Defendants assert ordinary preemption applies here, which serves as a defense to a claim. See Crump v. WorldCom, Inc., 128 F. Supp. 2d 549, 554-55 (W.D. Tenn. 2001); see also Sullivan v. Am. Airlines, Inc., 424 F.3d 267, 272-73 (2d Cir. 2005) ("Many federal statutes . . .

will support a defendant's argument that because federal law preempts state law, the defendant

cannot be held liable under state law.").

Preemption would apply in this case if (1) the terms of the Master Contract relate to "the

nature, provision, or extent of coverage or benefits (including payments with respect to

benefits") and (2) Section 5-335(a) relates to "health insurance or plans."  The crux of plaintiffs'

opposition to defendants' motion is the "coverage and benefits" inquiry; they do not argue that

Section 5-335(a) does not relate to "health insurance or plans."  Plaintiffs assert that a claim for

reimbursement or subrogation does not relate to the coverage and benefits of a health care plan.

The decisions by the Supreme Court and the Second Circuit Court of Appeals in

McVeigh changed the legal framework for how courts treat the interaction between state

subrogation laws and FEHBA's preemption provision.  Prior to McVeigh, courts routinely held

the Master Contract preempts state law subrogation principles because the state subrogation laws

related to coverage and benefits.  In Medcenters Health Care v. Ochs, 854 F. Supp. 589 (D.

Minn. 1993), the district court concluded that Minnesota state law was inconsistent with the

terms of the Master Contract and therefore preempted.  See Medcenters Health Care, 854 F.

Supp. at 592-593, aff'd, 26 F.3d 865 (8th Cir. 1994), overruled in part by McVeigh, 547 U.S.

677.[3]  Similarly, the Seventh Circuit Court of Appeals held FEHBA preempted state law

regarding subrogation.  Blue Cross & Blue Shield v. Cruz, 396 F.3d 793, 799 (7th Cir. 2005)

("Cruz I") ("Because Congress's clear intent was to make benefits uniform for FEHBA plan

enrollees of different states, state law regarding subrogation is preempted by the reimbursement

---

[3]        The district court in Medcenter Health Care found it had subject matter
jurisdiction, a finding the Court of Appeals affirmed.  In McVeigh, the Supreme Court, resolving
a circuit split on this issue, overruled this finding of subject matter jurisdiction.

provision in the Service Benefit Plan."), overruled in part by McVeigh, 547 U.S. 677, on

remand, 495 F.3d 510 (7th Cir. 2007) ("Cruz II"); accord Negron v. Patel, 6 F. Supp. 2d 366,

369 (E.D. Pa. 1998) ("[C]laims under state subrogation statutes . . . present relatively easy cases

for preemption."); Thurman v. State Farm Mut. Auto. Ins. Co., 598 S.E.2d 448 (Ga. 2004).

   In McVeigh, the Supreme Court observed two possible constructions concerning the

application of Section 8902(m).  Under the first reading, a reimbursement clause is relating to

"coverage or benefits" because it serves as "a condition or limitation on 'benefits' received by a

federal employee . . . ."  McVeigh, 547 U.S. at 697.  On the other hand, because "a claim for

reimbursement ordinarily arises long after 'coverage' and 'benefits' questions have been

resolved," it could be read as not related to "coverage or benefits" under Section 8902(m).  Id.

The Supreme Court did not choose between these two constructions, finding there was no

subject matter jurisdiction under either alternative.  The Court found the preemption provision

was insufficiently straightforward to preempt all state laws that would otherwise apply.  Id., 547

U.S. at 698 ("If Congress intends a preemption instruction completely to displace ordinarily

applicable state law . . . , it may be expected to make that atypical intention clear.").  Further, the

Court believed a modest reading of the preemption provision was appropriate because it raised a

provision of the contract, not a federal law, above state law.  Id.  The Court, therefore, was "not

prepared to say, based on the presentations made in this case, that under § 8902(m)(1), an

OPM–BCBSA contract term would displace every condition state law places on that recovery."

Id.

   Judge Sotomayor, in her opinion for the McVeigh Court, also observed that the

preempetion provision was problematic because it permitted preemption on the basis of a

contract provision, not federal law.  Therefore, she read the statute as stating:

14

> [I]n cases involving the terms of any contract under FEHBA which
> relate to the nature, provision, or extent of coverage or benefits,
> <u>federal law</u> shall supersede and preempt any State or local law, or any
> regulation issued thereunder, which relates to health insurance or
> plans.

<u>McVeigh</u>, 396 F.3d at 144 (emphasis in original).  While this Court will not go so far as to find

the statute unconstitutional, in light of the Supreme Court's and the Court of Appeals's hesitancy

to apply it, the Court reads it modestly.  <u>See also</u> <u>McVeigh</u>, 396 F.3d at 151 (Sack, J.,

concurring) (noting that this statement is not necessary to decision; commenting that the

preemption provision may be "unavoidably unconstitutional"); <u>id.</u>, 396 F.3d at 156 (Raggi, J.,

dissenting) ("Because courts assume that Congress legislates in light of constitutional limitations

. . . it is reasonable to conclude that the operation of federal law is necessarily implicit in

§ 8902(m)(1).").

　　　After <u>McVeigh</u>, courts withdrew from their earlier findings that FEHBA preempted state

subrogation laws.  In <u>Cruz II</u>, the Seventh Circuit Court of Appeals held FEHBA preemption

provision did not implicate unique federal concerns.  <u>Cruz II</u>, 495 F.3d at 512.  The issue in <u>Cruz</u>

<u>II</u> was to what extent an insured's reimbursement to an insurance provider should be reduced by

the attorneys' fees incurred by the insured in securing damages from the tortfeasor.  Under the

common fund doctrine, Illinois law provides the insured should reduce the amount reimbursed to

the insurance provider by the provider's proportional share of the fees incurred.  The insurance

provider argued FEHBA preempts the state law common fund doctrine.  Upon remand, the Court

of Appeals held a claim for reimbursement did not implicate the coverage or benefits of the

health insurance plan because the benefits for the insureds remain the same.  Rather, writing for

the Court, Judge Posner commented the common fund doctrine affected reimbursement, which

need not be uniform.  Because reimbursement would vary from state to state, the Court implied,

reimbursement did not affect the benefits under the health insurance plan.  Id. at 514; see also

Haw. Disability Rights Ctr. v. Cheung, 513 F. Supp. 2d 1185, 1196 (D. Haw. 2007) ("FEHBA's

preemption clause only displaced state law on issues relating to 'coverage or benefits,' not

subrogation or reimbursement rights in general."); Southerland v. Liberty Mut. Fire Ins. Co., 152

P.3d 260 (Okla. Ct. App. 2006) (holding state law requiring insured to be made whole by

settlement before obligation to subrogate arises was not preempted by FEHBA).[4]

   One point made by Judge Sotomayor in McVeigh, albeit in dicta, is highly relevant to the

current case.  She recognized "The suit will certainly trigger FEHBA's preemption provision at a

later stage if McVeigh defends herself by reference, for example, to a state health insurance

law."  McVeigh, 396 F.3d at 145 n.9.  This case presents the inverse of her hypothetical as the

insureds here seek a declaratory judgment barring reimbursement.  The Court does not find

Judge Sotomayor's warning persuasive, however, in light of (1) the Supreme Court's ultimate

decision in McVeigh and (2) how courts have interpreted the Supreme Court's decision.  In

addition, Judge Sotomayor's statement was addressed to the second prong of the preemption

analysis – whether the state law relates to health insurance.  It is undisputed that Section 5-335 is

directed to health insurance policies.

_____

   [4]   The one exception the Court could find in which a court found preemption of a
state law on subrogation or reimbursement following McVeigh law is the Sixth Circuit Court of
Appeals's decision in Shields v. Gov't Emps. Hosp. Ass'n, 450 F.3d 643, 648 (6th Cir. 2006),
where the Court of Appeals held federal law preempted Michigan law on reimbursement.  This
decision was issued the day after the Supreme Court's decision in McVeigh and does not cite
McVeigh.

   Further, in Blue Cross Blue Shield Health Care Plan of Ga., Inc. v. Gunter, 541 F.3d
13201323 (11th Cir. 2008), the Eleventh Circuit Court of Appeals noted, pursuant to Georgia
Supreme Court's decision in Thurman, 598 S.E. 2d at 451, Georgia subrogation law is not
applied when FEHBA is applicable.  Gunter does not turn on the question present in this case,
but rather on a state court decision regarding state law.

Because, following <u>McVeigh</u>, subrogation and reimbursement pursuant to a health insurance policy does not relate to the coverage and benefits under such a policy, the Court finds FEHBA does not preempt the New York law.  Dismissal is inappropriate on these grounds.[5]

**B.     Federal Common Law Under <u>Boyle</u>**

Defendants next argue that even if Section 8902(m) did not preempt the New York law, federal common law would nonetheless displace plaintiffs' claims.  State law is displaced by federal common law when (1) the issue implicates "uniquely federal interests" and (2) "a 'significant conflict' exists between an identifiable federal policy or interest and the operation of state law . . . ."  <u>Boyle v. United Techs. Corp.</u>, 487 U.S. at 507; <u>New York v. Nat'l Serv. Indus.</u>, 460 F.3d 201, 207 (2d Cir. 2006) ("[T]he essence of this test is whether the relevant federal interest warrants displacement of state law.").

In <u>McVeigh</u>, the Court of Appeals did not decide whether FEHBA and a health insurance contract issue pursuant to it addressed "uniquely federal interests" because it was not necessary to the ultimate outcome.  Judge Sack, in his concurrence, did find the case implicated "uniquely federal interests."  <u>See</u> <u>McVeigh</u>, 396 F.3d at 150 (Sack, J., concurring) ("Empire has made a substantial showing that the first part of the Boyle test has been met because this case implicates 'uniquely federal interests,' . . . in providing uniform healthcare coverage for federal employees and in decreasing the administrative costs associated with such insurance."); <u>accord</u> <u>McVeigh</u>, 396 F.3d at 151-61 (Raggi, J., dissenting).

---

[5]     Section 5-335(a) does not apply when there is a "statutory right of reimbursement."  While this would appear to be akin to the rule in Georgia under <u>Thurman</u>, 598 S.E. 2d at 451, it is not the case here.  First, the Court has not found any New York cases declining to apply Section 5-335(a) when FEHBA also applies.  Second, this case does not involve a "statutory right of reimbursement."  Defendants' right to reimbursement stems from the Master Contract, not federal law.

Prior to McVeigh, courts had found that FEHBA-based health insurance contracts implicated "uniquely federal interests."  See Caudill v. Blue Cross & Blue Shield, 999 F.2d 74, 78 (4th Cir. 1993) ("The interest in this case is uniquely federal because it involves health benefits for federal employees across the country."), overruled in part by McVeigh, 547 U.S. 677; accord Cruz I, 396 F.3d at 799 (stating that case met the test under Boyle); see also Rievley v. Blue Cross Blue Shield, 69 F. Supp. 2d 1028 (E.D. Tenn. 1999) (finding FEHBA preemption to involve uniquely federal interests).

The Supreme Court in McVeigh left unanswered whether FEHBA and health insurance plans implicated "uniquely federal interests."  The Supreme Court recognized that the Court of Appeals had noted the case involved "distinctly federal interests," McVeigh, 547 U.S. at 688, but made no determination of its own.  Instead, it questioned "why a proper federal-state balance would place such a nonstatutory issue under the complete governance of federal law, to be declared in a federal forum."  McVeigh, 547 U.S. at 701.  The Court commented that "[t]he state court in which the personal-injury suit was lodged is competent to apply federal law, to the extent it is relevant, and would seem best positioned to determine the lawyer's part in obtaining, and his or her fair share in, the tort recovery."  Id.

In Cruz II, the Seventh Circuit read this language as rejecting a finding of unique federal interests and held that FEHBA preemption did not implicate unique federal concerns.  Cruz II, 495 F.3d at 512.  Writing for the Court, Judge Posner found federal common law was concerned with uniformity of benefits.  The common fund doctrine, to the Court, affected reimbursement, which need not be uniform.  Because reimbursement would vary from state to state, the Court held, there could be no uniquely federal interests without a federal takeover of relevant state tort law.  Id. at 514; see also Van Horn v. Ark. Blue Cross & Blue Shield, 629 F. Supp. 2d 905, 911-

12 (E.D. Ark. 2007) (relying on Cruz II and concluding health benefits for federal employees did not implicate uniquely federal interests).  And, there would be no takeover of state tort law without preemption, which is not appropriate.

Because the interests at issue are not uniquely federal, federal common law does not displace plaintiffs' claims.  Dismissal is not appropriate on this basis either.

### C.    Sovereign Immunity

Defendants' third argument is that they are protected by the federal government's sovereign immunity.  The United States is immune from suit except to the extent it has "unequivocally" waived its sovereign immunity, Lane v. Pena, 518 U.S. 187, 192 (1996), or it consents to be sued.  When sovereign immunity is waived, "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  United States v. Testan, 424 U.S. 392, 399 (1976).  The "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."  Soriano v. United States, 352 U.S. 270, 276 (1957).  Where there is no waiver of the government's sovereign immunity, the Court lacks subject matter jurisdiction to hear the case.  Dorking Genetics v. United States, 76 F.3d 1261, 1264 (2d Cir. 1996).

A case is dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court possesses neither the statutory nor the constitutional power to adjudicate it.  Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).  The Court should not draw argumentative inferences in plaintiffs' favor when determining if subject matter jurisdiction exists.  Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l, Ltd., 968 F.2d 196, 198 (2d Cir. 1992).

In a declaration, Clinton Shatzer, Director of the Program Services for BCBSA's Federal Employee Program, set forth the procedures that BCBSA and the local Blue Cross and Blue

19

Shield companies take to collect premiums and pay health care providers and enrollees.[6]

According to Shatzer, premiums from federal employees and the government for those

employees are collected by the federal payroll offices and forwarded to a dedicated fund at the

United States Treasury.  Health insurers pay health care providers and enrollees for health

services and then are paid from the premiums fund using a special letter of credit account

("LOCA") in the United States Treasury.  Collected premium payments are made available in

the LOCA for withdrawal by the health insurers who withdraw funds from the LOCA on a

"checks-presented basis."  Each insurer returns subrogation and reimbursement funds to the

dedicated fund at the treasury by reducing its LOCA withdrawals.[7]  See also McVeigh, 547 U.S.

at 685 ("Pursuant to the OPM–BCBSA master contract, reimbursements obtained by the carrier

must be returned to the Treasury Fund.") & 702-03 (Breyer, J., dissenting); see generally 5

U.S.C. § 8909.

Based on these facts, defendants assert that although they are private parties, a judgment

against them would implicate the federal government insofar as it would cost the federal treasury

money and interfere with OPM's administration of FEHBA, even though Congress has not

waived the United States's immunity for state law claims related to the administration of

---

[6]    Because the challenge based on defendants' sovereign immunity is made pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, the Court may review evidence outside the pleadings in its analysis.  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

[7]    Shatzer provides an example of a Blue Cross and Blue Shield company who presents $100,000 in checks to its bank and is therefore entitled to draw down that amount from the LOCA.  If there are also $10,000 in subrogation and reimbursement recoveries owed to the federal Treasury, then the total draw down would be $90,000, reduced for the subrogation and reimbursement.

FEHBA plans.[8]

The parties disagree on whether defendants can be protected by the government's sovereign immunity.  To resolve this question, the Court considers the following factors: "(1) how the entity is referred to in its documents of origin; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's financial obligations are binding upon the state." McGinty v. New York, 251 F.3d 84, 95-96 (2d Cir. 2001); see also Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 401-02 (1979); Dugan v. Rank, 372 U.S. 609, 620 (1963) ("The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.").  If these factors do not resolve the dispute, the Court "must ask whether a suit against the entity in federal court would threaten the integrity of the state and expose its treasury to risk.  If the answer is still in doubt, a concern for the state fisc will control." McGinty, 251 F.3d at 96.

Because defendants are private entities, and not state-created agencies or corporations, the first five factors weigh against a finding of sovereign immunity.  See AMA v. United

---

[8]      Section 8912 of Title 5 of the United States Code provides "The district courts of the United States have original jurisdiction, concurrent with the United States Court of Federal Claims, of a civil action or claim against the United States founded on this chapter."  Plaintiffs do not raise this statute in their opposition, and, therefore, the Court will not consider it as providing jurisdiction in this matter.  Regardless, it appears that the Supreme Court rejected the argument that Section 8912 provides a waiver of the federal government's sovereign immunity in an action such as this.  McVeigh, 547 U.S. at 696 ("Had Congress found it necessary or proper to extend federal jurisdiction further, in particular, to encompass contract-derived reimbursement claims between carriers and insured workers, it would have been easy enough for Congress to say so.").

Healthcare Corp., 2003 U.S. Dist. LEXIS 14686 (S.D.N.Y. Aug. 22, 2003) ("As an initial matter, the Court notes that as a private entity, [defendants] have taken a rather unique position.  In the usual case, it is a State-created agency or corporation that claims arm-of-the-state immunity, and not a private entity.  As a result, the first five factors weigh against a finding of immunity."). These factors are not weighed evenly, and the sixth factor is the most important to the Court's analysis.  See McGinty, 251 F.3d at 100 ("[T]he vulnerability of the State's purse is the most salient factor.").

The Master Contract between OPM and BCBSA provides all "payments made and liabilities incurred for covered health care services" as well as "legal expenses incurred in the litigation of benefits payments" are chargeable to the federal treasury.  2008 Master Contract § 3.2(b)(2)(i), (ii).  Between the process described by Shatzer whereby payments to the health insurer are directed to the federal treasury and the Master Contract's reimbursement language, it is clear that an order in this case for defendants to refund money obtained by plaintiffs in their settlement would, in fact, be paid by the federal treasury.  Therefore, sovereign immunity bars plaintiffs' claim for money damages.  See Dugan, 372 U.S. at 620.

As to the equitable relief sought by plaintiffs, the Court is hesitant to find plaintiffs' claims barred by sovereign immunity.  Plaintiffs seek an order enjoining defendants from seeking reimbursement from plaintiffs.  Defendants urge that such an order would interfere with the public administration of FEHBA plans, citing Dugan.

The Court previously found that FEHBA does not preempt the New York subrogation statute and that federal common law does displace plaintiffs' state law claims.  Should the Court now decide plaintiffs are not entitled to declaratory relief, there would be no mechanism by which the state subrogation law – which remains applicable – could protect these plaintiffs and

future insureds.  As Judge Sotomayor observed in a ruling on a petition for rehearing in

McVeigh, the policy arguments concerning the administration of a federal program in light of a

countervailing state policy are best left to Congress to consider, not the courts.  McVeigh, 402

F.3d 107, 110 (2d Cir. 2005) (on petition for rehearing).

Additionally, although defendants argue that the Master Contract requires them to seek

subrogation, they again run into the reality of the Supremacy Clause, which is that a federal

contract provision does not preempt a state law.  McVeigh, 396 F.3d at 143-44.  Relatedly, the

parties who would be enjoined if the Court were to find plaintiffs entitled to the relief are private

parties, not the federal government.  The contract between OPM and BCBSA is not in front of

the Court.  If Congress wanted to require health insurance providers under FEHBA to always

seek subrogation and reimbursement no matter the applicable state law, it could pass a law doing

so.

Finally, the terms of the Master Contract are not as strict in seeking reimbursement and

subrogation as defendants would have the Court believe.  The Master Contract grants a health

insurer "the right to be subrogated and succeed to any rights of recovery . . . ."  Further, it

specifically does not require a health insurer to succeed in obtaining reimbursement or

subrogation, only to make a "reasonable effort to seek recovery of amounts to which it is entitled

to recover in cases which are brought to its attention."  This permissive language indicates that

the declaratory relief, if awarded, would not so undermine the administration of FEHBA plans so

as to warrant a finding under Dugan that the government would be restrained from acting.

Dugan, 372 U.S. at 620.  The Court will not dismiss plaintiffs' request for declaratory relief on

sovereign immunity grounds.

### D.    Plaintiffs' Claim Under New York Gen. Bus. Law § 349

Finally, defendants move to dismiss count two of the complaint which asserts a claim under New York Gen. Bus. Law § 349.  To assert a claim under Section 349, a plaintiff must allege (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result.  Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000).  "Deceptive practices" include "acts which are dishonest or misleading in a material respect."  Kramer v. Pollock-Krasner Found., 890 F. Supp. 250, 258 (S.D.N.Y. 1995).  "'Deceptive acts' are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances."  Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009).

Plaintiffs allege that defendants' assertion of a lien on their settlement proceeds was a deceptive act insofar as defendants did not inform plaintiffs of the New York law which made such liens unlawful.  According to the complaint, defendants asserted a lien against the proceeds of the settlement, but there is no allegation that defendants collected on that lien.  Without such an allegation, plaintiffs cannot show they suffered an injury.  Even if defendants did collect from the potential classmembers, there is no such allegation as to named plaintiffs.  See Lewis v. Casey, 518 U.S. 343, 357 (1996) ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); In re Morgan Stanley Mortg. Pass-Through Certificates Litig., 2010 U.S. Dist. LEXIS 84146, at *13 (S.D.N.Y. Aug. 17, 2010).  Therefore, this claim is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Court DENIES plaintiffs' motion to remand (Doc. #16) and GRANTS defendants' motion to dismiss (Doc. #8) as to plaintiffs' request for damages with prejudice and plaintiffs' Section 349 without prejudice.  Plaintiffs shall file their amended complaint, if any, by August 15, 2011.

The Clerk is instructed to terminate these motions.

Dated: July 29, 2011
     White Plains, New York

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

25